[No. 4575.   Decided Feb. 4, 1905.]

BESSIE WALKER, *as Administratix, etc., v.* ELLEN A.
HARGEAR *et al., Respondents.*[1]

GIFTS—EVIDENCE OF INTENTION—SUFFICIENCY—FINDINGS WHEN SUSTAINED. Findings of the trial court that the transfer of certain bonds and securities from the decedent to his niece was intended as a gift, are sustained by the evidence where it appears that he earned large sums of money, and gave liberally to all his relatives, that he had conceived a great attachment for his niece, to whom he gave preference in every way, and that he constantly wrote speaking of the securities as her own, and never required any accounting, either of the principal or of the proceeds.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered July 1, 1902, upon findings in favor of the defendants, dismissing on the merits an action for an accounting, after a trial before the court without a jury. Affirmed.

[1]Reported in 79 Pac. 472.

*A. R. Titlow* and *John A. Shackleford,* for appellant.

*J. M. Ashton* and *W. L. Sachse,* for respondents.

FULLERTON, J.—The appellant, as administratrix with the will annexed of the estate of Allan James Foley, deceased, brought this action against the respondents to recover certain property which she alleges was entrusted to the respondent Lillian F. Hargear, by Allan James Foley, to hold as trustee and agent for him, which property was in part in her possession and under her control, and in part in the possession and under the control of the other respondents. The property was alleged to consist of a library of great value, including a musical library; of furniture, silverware, curios, and other personal property of like kind; of bonds of the state of Virginia of the face value of $55,000, and other bonds; of state, school, and county warrants, stocks in mining corporations and other securities; and of money on deposit in banks, and in the possession of the respondents. It was further alleged that the appellant was unable to give a more accurate description of the property, or accurately state its value, because of the refusal of the respondents to give any information concerning the same, but that the appellant believed such property to be of the value of more than fifty thousand dollars. The appellant prayed that the respondents be compelled to account for such property, and, on said accounting, to deliver the same to the appellant, as administratrix, that it might be administered upon according to law.

The respondents Lillian F. Hargear and Bessie L. Hargear answered jointly, denying that they had property of any kind belonging to the estate of Allan James Foley, deceased, and averring that any property they then had which

may have formerly belonged to him was given them by him in his lifetime, in consideration of the mutual love and affection existing between them and him, as their sole and separate property, and was by them, at the time of said gifts, accepted and taken as their sole property. The respondent Ellen A. Hargear answered separately; her answer was, however, of the same tenor and effect as the answer of the other respondents. The affirmative matter of the answers was put in issue by appropriate replies.

On the trial it developed that Mr. Foley had, at sundry times, commencing in 1894, and continuing up to the time of his death in the latter part of the year 1899, placed in the possession of Lillian F. Hargear various sums of money, aggregating several thousand dollars, and had delivered to her bonds of the state of Virginia of the face value of $50,000, and had, during the same time, presented each of the respondents with various articles of wearing apparel, with jewelry of considerable value, and had furnished the house in which they resided with rare pieces of furniture and bric-a-brac of various kinds, gathered on his tours in this and in foreign countries. This house, also, was constructed with money furnished by the deceased. In one of his earliest visits to the respondents, he arranged for its construction, and, later on, sent Lillian F. Hargear the money necessary for that purpose, as well as the money to buy the lots upon which it was erected. Later he sent her money for the purchase of a cottage at Delano Beach. The title to each of these properties was taken, by his special direction, in the name of Lillian F. Hargear.

The respondent Ellen A. Hargear is a sister of the decedent, and Lillian F. Hargear and Bessie A. Hargear are his nieces, and are daughters of Ellen A. Hargear. The appellant is, also, a sister of the deceased. The decedent

had a brother, one W. R. Foley, who was the father of a considerable family. To all of his relatives, the decedent was exceedingly liberal. The record shows that appellant herself had received at one time some $2,400 for the purpose of building a house for herself and family, and that one member, at least, of the brother's family had been educated in Europe at the decedent's expense, and that the brother himself was in constant receipt of gifts of property and money from the decedent, and that all of them had received personal gifts of jewelry and wearing apparel, much of the character of that received by the respondents.

On the trial the appellant abandoned any claim to the dwelling house and the cottage at Delano Beach, and also to the household furniture, curios, and other bric-a-brac, and the various articles of jewelry and wearing apparel, mentioned in the complaint as having been received by the respondents, but contended that Lillian F. Hargear was liable to account for the moneys received and invested in state and county securities, and for the bonds of the state of Virginia. The trial court, however, held that she had received these as gifts from Allan James Foley, and entered judgment to the effect that the appellant take nothing by her action, and that the respondents recover their costs.

That Mr. Foley intended the Virginia bonds, and the various sums of money he sent Lillian F. Hargear, as gifts to her, it seems to us, the record hardly leaves a doubt. Mr. Foley was a noted musician, capable of earning large sums of money in the practice of his art. During the season of the year when his services were in demand, he made his headquarters at London, England; the balance of the year he spent in recreation and pleasure. While previous to 1894 he wrote occasionally to his sister Ellen A. Hargear, he paid his first visit to her family home in that year. At

this visit he conceived a great affection for his niece Lillian F. Hargear, returning to visit at her mother's home each recurring year from that time up to his death, except the year 1898, when he had her come to his London residence and spend the summer travelling with him in England and on the continent of Europe. When separated from her, he wrote to her constantly—the greater part of the time, as often as twice in each week. And the last letter that he ever penned, which was but a few hours preceding his death, was a letter to her. His letters, also, many of which are in the record, betray towards her the warmest affection. In the practice of his art he travelled over England, Ireland, and the continent of Europe, in Canada, and parts of the United States, and his letters were written from many places, and under various conditions, but whether they were merely rambling accounts of his personal doings, of people he met with, of places he visited, or pertaining to matters of a business nature, they all show that, no matter how uncomfortable or exacting was his situation, or how arduous were his labors, his thoughts were centered upon her, and that her welfare and happiness was his chief consideration.

Toward his other relatives, while he seems to have entertained for them the regard men usually bear towards their worthy kindred, he never expressed, and seems not to have had, any particular affection. He assisted them when they were in need, and when requested so to do, but did not regard them as particular objects of his care.

In the light of these circumstances, there was nothing strange in the fact that he made this niece the recipient of his special bounty. On her he had showered all of his affections, and it was but natural that he should shower upon her that part of his property of which he had no

special need.   On the other hand, it would seem strange that he would select her as the keeper of his property or as his agent to make investments for him.   While the record shows her to be a woman of good intelligence, and possessed of ordinary business qualifications, yet she was not engaged in the business of keeping property or making investments for others.   She was a teacher in the public schools, and her opportunities for safely keeping property, or investing it, were not equal to the many who were engaged directly in that business.   But that safe keeping or investment was not his object, is further evidenced, it seems to us, by the fact that no accounting was ever demanded. Miss Hargear received at least a part of the money now thought to belong to the estate of Mr. Foley as early as 1894, yet there is not the slightest evidence in the record that he ever called her to account for it, or that he ever inquired how much it had earned.   Indeed, so far from making any such demand, it is shown by one of his letters that, on one of his visits, he borrowed $150 from her on leaving, which he repaid by his earnings from a chance concert he gave while on his way from Tacoma to London. These letters also contain much else tending to show that the money and bonds were gifts.   In no letter does he claim an interest in either, and, whenever he mentions either money or bonds, he always refers to it or them as her property.   For example, as late as October, 1897, he wrote her, evidently in answer to her letter concerning the state of her health, using this language:   "You have a thousand dollars a year coming in from those Virginians, so you need not feel hard up, and I insist on you resting yourself when you don't feel perfectly well.   Health above all things, darling; and school work is so fagging  .  .  .  ;" and, in September preceding this, he  wrote  concerning  her

investments, using the following language: "By this time you are in full swing again at work; 'tis awful drudgery, poor old girl.   The moment I get to London, if my N. Y. centrals are up, I shall sell them and send you a couple of thousand for your investments  .  .  .  ."   And, on December 15th of the same year, he wrote her, referring to the Delano Beach property, "I am not at all sorry I sent the money, darling.   Don't have anything to do with Delano, if you are at all afraid of it.   The money will be useful for warrants or to dress yourselves with.   I want you to dress like Christians."   Much more of the same character might be cited, but these are sufficient to indicate their general character.   They are not the language of a man to his business agent, but rather that of a father to his daughter.   The language used indicates a gift, not the creation of a trust.

. The oral evidence in the record is too long to review, even were it profitable so to do, but we think that such evidence, although conflicting, justifies the conclusion of the trial court, rather than the contention of the appellant.   In the main, the appellant's evidence consisted of declarations which were said to have been made by Mr. Foley to his relatives and casual acquaintances, and of admissions said to have been made by Miss Hargear subsequent to her uncle's death.   Much of this, however, is as consistent with the idea of a gift as it is with the idea of agency, and much of it seems to have been incorrectly understood or reported.   But, giving to it all the credence to which it is justly entitled, it does not overcome the positive evidence in the record to the contrary.

But it is needless to pursue the inquiry further.   The judgment is in accord with the weight of the evidence. and should be affirmed.   It will be so ordered.

MOUNT, C. J., and DUNBAR and HADLEY, JJ., concur.